IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

FOREST GUARDIANS
312 Montezuma Ave., Suite A
Santa Fe, NM 87501

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY
2000 P St., NW Suite 240
Washington, DC  20036

CENTER FOR NATIVE ECOSYSTEMS
1536 Wynkoop St, Ste 302
Denver, CO 80202

WILDLANDS CONSERVATION ALLIANCE
410 Thompson St.
Port Jefferson, NY 11777

JEWS OF THE EARTH
2424 Vine St.
Denver, CO 80205

CON SLOBODCHIKOFF
2280 Quail Run Rd.
Cottonwood, AZ 86326

DAVID LIGHTFOOT
615 Mission Ave. NE
Albuquerque, NM 87107

ANA DAVIDSON
21 Forest Rd.
Tijeras, NM 87059

BOB LUCE
9441 Patty Dr.
Sierra Vista, AZ 85635

                        Plaintiffs,

     v.

**Case No.:_____**

**Complaint for Declaratory and
Injunctive Relief - 1**

DIRK KEMPTHORNE
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

DALE HALL
Director
U.S. Fish & Wildlife Service
1849 C Street, NW
Washington, DC 20240

                    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Through this civil action, Plaintiffs Forest Guardians, Public Employees for
Environmental Responsibility, Center for Native Ecosystems, Wildlands Conservation Alliance,
Jews of the Earth, Con Slobodchikoff, Dr. David Lightfoot, Dr. Ana Davidson and Bob Luce
challenge Defendants' failure to comply with the Endangered Species Act (ESA), 16 U.S.C. §
1533, in making its February 7, 2006 negative 90-day finding that the Petition to list the
Gunnison's prairie dog (*Cynomys gunnisoni*) as threatened or endangered under the ESA did not
present substantial scientific information indicating listing may be warranted.  71 Fed. Reg.
6241-6248 (hereinafter "negative 90-day finding").

2.      The United States Fish and Wildlife Service's (FWS) negative 90-day finding
violated the ESA by: failing to base its decision on the best available science; failing to draw
causal connections between loss of populations and habitat due to plague with overall declines in
the species' population; failing to fully consider continuing poising/eradication efforts; failing to
consider the effect of drought; finding that oil and gas activities and sprawl do not threaten
further loss of habitat; improperly relying on promised future management measures; failing to
consider whether the species is in danger throughout a significant portion of its range; reviewing

information beyond the four corners of the Petition; and applying the wrong standard of review. Consequently, the negative 90-day finding violated ESA requirements and Administrative Procedure Act (APA) standards.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(g)(1)(C) (citizen suit provision of the ESA), 5 U.S.C. §§ 701-706 and 28 U.S.C. § 1331 (federal question jurisdiction), and may issue a declaratory judgment, 28 U.S.C. § 2201, and further injunctive relief pursuant to 28 U.S.C. § 2202.  Pursuant to 16 U.S.C. § 1540(g)(2), notice has been provided to the Defendants more than 60 days prior to filing this complaint.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g).  Defendants, Secretary Dirk Kempthorne and Director Dale Hall, reside, in their official capacity, in the District of Columbia.  Additionally, a substantial part of the events and omissions giving rise to the claims in this case, as well as violations of mandatory duties under the ESA, occurred in the District of Columbia.

## PARTIES

5.      Plaintiff FOREST GUARDIANS is a non-profit environmental group with offices in Santa Fe, New Mexico and Denver, Colorado, whose mission is to protect and restore the wildlands and wildlife in the American Southwest through fundamental reform of public policies and practices.  Forest Guardians' staff authored the 2004 petition to list the Gunnison's prairie dog as threatened or endangered under the Endangered Species Act.  Forest Guardians has 1,650 members.  Staff, members and supporters of Forest Guardians conduct scientific research on the Gunnison's prairie dog and its habitat and work on habitat protection measures for the species. Staff, members and supporters regularly recreate in the habitat area of the Gunnison's prairie dog and plan to continue to do so in the future.  Staff and supporters seek to ensure that the full complement of native species exists in their native habitat, including the Gunnison's prairie dog, in the United States.  Staff and supporters seek to compel those agencies charged with protecting

endangered and threatened species to follow the laws designed to protect those species. The above-described educational, scientific, aesthetic, spiritual, conservation, and recreational interests of Forest Guardians, its staff and supporters, have been, are being, and, unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

6.      Plaintiff PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY (PEER) is a national, non-profit organization that represents public employees who are working to protect, preserve, and restore native ecosystems in the western United States. Thus, any local, state or federal actions, or inactions, that interfere with recovery of threatened or endangered species or their habitat undermines the work and employment of PEER members. In addition, PEER and its members have an interest in the integrity of scientific decision-making by natural resource agencies, and seek to remedy situations, such as that presented in this case, where scientific findings of federal agency employees are ignored or reversed for non-scientific political reasons. PEER has members who reside in the American West, including the "Four Corners" region of northern Arizona, southwestern Colorado, northwestern New Mexico, and southeastern Utah, which is the habitat of the Gunnison's prairie dog. Plaintiff PEER brings this action on behalf of itself and its adversely affected members. PEER's members are particularly concerned about the protection and recovery of the Gunnison's prairie dog because it is a keystone species in its native grasslands. As such, the presence of this species helps to support the ecosystem (entire community of life) of which it is a part. Many other species depend upon, or are benefited by, the Gunnison's prairie dog. Members of PEER frequently use and enjoy the deserts and grasslands of the West, including the areas that comprise the Gunnison's prairie dogs' historic and current range, for wildlife viewing and recreational, scientific, educational, aesthetic, and other activities, and will continue to do so in the future. PEER and its members have a substantial interest in this matter and are adversely affected and aggrieved by defendants' failure to comply with the ESA and the APA. The requested relief will redress PEER's and its members' injuries.

7.    Plaintiff CENTER FOR NATIVE ECOSYSTEMS (Center) is a Denver, Colorado-based non-profit, science-based conservation organization dedicated to conserving, protecting and recovering native and naturally functioning ecosystems in the greater Southern Rockies region, which includes the area within the range of the Gunnison's prairie dog.  The Center values the clean water, fresh air, healthy communities, sources of food and medicine, and recreational opportunities provided by native biological diversity.  The Center also passionately believes that all species and their natural communities have the right to exist and thrive.  The Center uses the best available science to forward its mission through participation in policy, public outreach and organizing, administrative processes, legal action, and education.  The Center, its staff, and members derive scientific, aesthetic, and spiritual benefit from the Gunnison's prairie dog's existence in the wild and from the ecosystem upon which it depends. Center for Native Ecosystems signed the 2004 petition to list Gunnison's prairie dogs as threatened or endangered under the Endangered Species Act.  Center for Native Ecosystems staff and members regularly recreate in the habitat area of the Gunnison's prairie dog and plan to continue to do so in the future.  Staff and members visit and view Gunnison's prairie dogs throughout the Four Corners region, and intend to return to Gunnison's prairie dog colonies to continue to view these animals and the abundance of other wildlife species prairie dog habitat supports.  The above-described educational, scientific, aesthetic, spiritual, and conservation interests of the Center, its staff and members, have been, are being, and unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

8.    Plaintiff WILDLANDS CONSERVATION ALLIANCE (Wildlands) is a 501(c)(3) nonprofit organization founded in 2001 operating in Arizona and New York. Wildlands is dedicated to the protection and restoration of native wild animals and plants in their natural communities.   Wildlands staff and supporters conduct scientific research on the Gunnison's prairie dog and their habitat.  Wildlands staff and supporters provide consultation services to local residents and businesses in an effort to educate the public at large about how to

coexist with wildlife and reduce prairie dog-human conflict.  The above-described conservation, scientific and educational interests of Wildlands Conservation Alliance, its staff and supporters, have been, are being, and unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

9.      Plaintiff JEWS OF THE EARTH (JOTE) is a faith-based environmental non-profit organization in Denver, CO.  Our vision is to honor the Creator by protecting creation.  We are concerned about the Gunnison's Prairie Dog for two main reasons.  First, we recognize each species as a facet of God's spectacular plan.  Just as Noah was commanded to preserve each species (Gen 6:19), so is it incumbent upon us to do no less.  JOTE joins this lawsuit as advocates of sustaining as complete a representation of God's created world as possible.  This is especially true for those species with whom we share the state of Colorado, since those species are the ones we would see when we go to commune with God in our immediate region.  Secondly, as Jews, we are commanded to defend the helpless in our midst.  The Gunnison's Prairie Dog is not able to protect itself from human greed.  Just as God gave the Jews laws which constrain individual hedonism, as a society we must pass laws in order to create a harmonious landscape for all of creatures to co-exist in.  The ESA is an example of one of these laws, and Gunnison's Prairie Dog should be protected by it.  We would be harmed should the Gunnison Prairie Dog become extinct because we would no longer have the lesson that this species had to teach us about how God works.

10.     Plaintiff CON SLOBODCHIKOFF is a biologist who is based in Flagstaff, Arizona.  Mr. Slobodchikoff signed the 2004 petition to list Gunnison's prairie dogs as threatened or endangered under the Endangered Species Act.  Mr. Slobodchikoff conducts scientific research on the ecology, social behavior, and communication of Gunnison's prairie dogs and intends to continue conducting such activities in the future.  Mr. Slobodchikoff also regularly recreates in the habitat of Gunnison's prairie dogs, and plans to continue doing so in the future.  Mr. Slobodchikoff seeks to ensure that this species will continue to exist in its native habitat, and seeks to compel the agencies charged with protecting endangered and threatened

species to follow the laws that were designed to protect such species.  Mr. Slobodchikoff's scientific and recreational interests will continue to be adversely affected and irreparably injured by the Defendants' actions, unless this Court grants the requested relief.

11.     Plaintiff DR. DAVID LIGHTFOOT is a biologist in Albuquerque, New Mexico. Dr. Lightfoot conducts scientific research on the ecology of Gunnison's prairie dogs.  Dr. Lightfoot also conducts research on insects that are associated with Gunnison's prairie dogs.  He intends to continue conducting research on Gunnision's prairie dogs and their associated insects. He seeks to compel the federal and state agencies charged with protecting endangered and threatened species to follow the laws that were designed to protect those species.  He also seeks to compel federal and state agencies mandated to protect those species to follow scientific procedures, and to make species protection decisions based upon the best scientific information available.  His scientific research interests will be adversely affected and irreparably injured by the Defendants' actions, unless the Court grants the requested relief.

12.     Plaintiff DR. ANA DAVIDSON is a biologist in Albuquerque, New Mexico.  Dr. Davidson signed the 2004 petition to list Gunnison's prairie dogs as threatened or endangered under the Endangered Species Act.  Dr. Davidson conducts scientific research on the ecology of Gunnison's prairie dogs, evaluating their roles on the flora and fauna of grassland ecosystems. She intends to continue conducting research on Gunnision's prairie dogs and the species associated with them.  She seeks to compel the federal and state agencies charged with protecting endangered and threatened species to follow the laws that were designed to protect those species. She also seeks to compel federal and state agencies mandated to protect those species to follow scientific procedures, and to make species protection decisions based upon the best scientific information available.  Her scientific research interests will be adversely affected and irreparably injured by the Defendants' actions, unless the Court grants the requested relief.

13.     Plaintiff BOB LUCE is a retired state wildlife biologist who resides in Sierra Vista, Arizona.  Mr. Luce was former coordinator of the Interstate Prairie Dog Team, a working group of wildlife officials from the 12 states in which prairie dogs reside in the U.S. Mr. Luce

was a signatory to the Notice of Intent to Sue the Service over its negative 90-day finding on the Gunnison's Prairie Dog in February 2006. Mr. Luce has a scientific and conservation interest in Gunnison's prairie dogs given his multi-year commitment to conservation planning to recover imperiled prairie dogs. He seeks to compel the federal and state agencies charged with protecting endangered and threatened species to follow the laws that were designed to protect those species. He also seeks to compel federal and state agencies mandated to protect those species to follow scientific procedures, and to make species protection decisions based upon the best scientific information available. His scientific research interests will be adversely affected and irreparably injured by the Defendants' actions, unless the Court grants the requested relief.

14.    Defendant DIRK KEMPTHORNE is sued in his official capacity as the Secretary of the Interior (Secretary). The Secretary is the federal official who bears ultimate responsibility for implementation of the ESA, including making determinations on petitions to list species.

15.    Defendant DALE HALL is sued in his official capacity as the Director of the FWS. Mr. Hall is legally charged with administering the ESA including review and approval of proposed listing decisions for endangered and threatened species.

## THE ENDANGERED SPECIES ACT

16.    The ESA "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). To achieve its objectives, the ESA directs FWS to determine which species of plants and animals are "threatened" or "endangered." Id. at § 1533.

17.    A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." Id. at § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future." Id. at § 1532(20).

18.    A species may be listed as endangered or threatened if FWS finds that any one or more of the following factors ("listing factors") are present:

(a)    the present or threatened destruction, modification or curtailment of its habitat or range;

(b)    overutilization for commercial, recreational, scientific or educational purposes;

(c)    disease or predation;

(d)    the inadequacy of existing regulatory mechanisms; or

(e)    other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c).

19.    The FWS must make listing determinations based solely on the "best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). FWS may not consider political or social factors when determining whether to list species.

20.    Any interested person may file a petition with FWS to list a species as threatened or endangered under the ESA. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). Upon receipt, FWS must review the petition and within 90 days make a finding as to whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). "Substantial information" is the "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b). This finding is commonly called the "90-day finding."

21.    In making the 90-day finding, FWS must consider whether the petition:

(a)    Clearly indicates the administrative measure recommended and gives the scientific and common name of the species involved;

(b)    Contains detailed narrative justification for the recommended measure, describing, based upon available information, past and present numbers and distribution of the species involved and any threats faced by the species;

(c)    Provides information on the status of the species over all or a significant portion of its range; and

(d)    Is accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps.

50 C.F.R. § 424.14(b)(2).

22.    In making a 90-day finding, FWS takes into account information submitted with and referenced in the petition and all other information readily available in the Service's files. At the 90-day finding stage, the FWS does not reach the ultimate conclusion as to whether listing is, in fact, warranted.  Rather, the 90-day finding merely considers whether a petition states a reasonable case that any petitioned species may be a listable entity.

23.    If FWS concludes in its 90-day finding that the petition does not present substantial information indicating listing may be warranted, the listing process concludes.  The ESA expressly provides that such a negative 90-day finding may be challenged in federal court. 16 U.S.C. § 1533(b)(3)(C)(ii).

24.    If FWS concludes in its 90-day finding that the petition does present substantial information indicating listing may be warranted, FWS must publish a notice of its finding in the Federal Register.  16 U.S.C. § 1533(b)(3)(A).  FWS must then commence a status review of the species and make a formal "warranted" or "not warranted" listing determination within 12 months of receipt of the petition.  40 C.F.R. § 424.14(b)(3).  Under the ESA, listed species are provided several procedural and substantive protections designed to prevent extinction and recover the imperiled species.  See, e.g., 16 U.S.C. §§ 1533(f) (recovery plans), 1536(a)(2) (consultations), and 1538(a)(1)(B) and (G) (prohibition against takings).

## FACTUAL ALLEGATIONS

### I.    The Gunnison's Prairie Dog

25.    The Gunnison's prairie dog is one of five species of prairie dog found in North America (the others being the Utah (listed as threatened), Black-tailed, White-tailed, and Mexican (listed as endangered)).  The current distribution of the Gunnison's prairie dog is found in the "Four Corners" region of northern Arizona, southwestern Colorado, northwestern New Mexico, and southeastern Utah.

26.    Gunnison's prairie dogs are social animals that live in colonies.  Gunnison's prairie dog colonies typically number fewer than 50-100 individuals.

27.    Recent estimates have found that 27% of habitat suitable for the Gunnison's prairie dog occurs in Arizona, 25% in Colorado, 45% in New Mexico, and 3% in Utah.

28.    A keystone species is a species whose very presence contributes to a greater diversity of life and whose extinction would consequently lead to the extinction of other forms of life. Keystone species help to support the ecosystem (entire community of life) of which they are a part.  The Gunnison's prairie dog is a keystone species.  As a keystone species, the Gunnison's prairie dog plays an important role in its ecosystem, serving as prey and creating habitat for other species.  A high diversity of vertebrate, invertebrate, and plant species can be found amongst prairie dog colonies at levels markedly greater than that of surrounding grasslands where there are no prairie dog colonies.

29.    Several studies have found that more than 100 vertebrate species are associated with prairie dog populations.  The most comprehensive review of prairie dog-associated-species found that of the 208 species observed on or near prairie dog colonies, nine were considered to be dependent on prairie dogs and their colonies.  Of those, the significant decline of the burrowing owl is partially attributed to prairie dog control, while a reduction in nesting populations of ferruginous hawks is in part due to the drastic reduction in abundance of prairie dogs.  Other species strongly associated with prairie dogs include mountain plovers (twice proposed for ESA protection) and black-footed ferrets (listed as Endangered).  Over 140 species benefit from the existence of prairie dog colonies.

30.    Habitat loss and destruction, sylvatic plague, poisoning, and shooting all threaten the Gunnison's prairie dog population.  As a result, the Gunnison's prairie dog population has declined dramatically throughout the 20th century.  FWS admits that the species' population has declined by 97% in the past century.

31.    Habitat has dramatically decreased.  From 1916 to 1961, an approximate 95% reduction in habitat (24 million acres to 1 million acres) was lost.

32.    Overall, occupied habitat continues to decrease.  As of 2005, currently existing habitat is estimated from anywhere between approximately 722,000 acres to approximately 200,000-335,600. This reflects a reduction of up to 80% of its habitat over the past few decades and a decline of 97% over the past century.

33.    Site-specific habitat area estimates also have declined.  In six of seven observed sites, there has been a decline in occupied habitat.  Declines of occupied habitat at these sites are attributed to plague.  Of the six declining sites, four of the six have seen 99% to 100% reduction in habitat.  Of the remaining two sites, one has seen declines from 15,569 acres in 1980 to 770 acres in 2003 (95% reduction) and the other has seen declines from >12,000 acres in 1984 to >6000 acres in 2005 (50% reduction).

34.    In addition to habitat declines, Gunnison's prairie dog colonies have also witnessed dramatic declines attributable to plague.

35.    Sylvatic plague is the current principle threat to the species.  Of all cases of sylvatic plague reported in the U.S., 80% have occurred within the Gunnison's range.  Sylvatic plague has been and continues to be the major mortality factor for Gunnison's prairie dog.  This non-native disease can result in devastating population effects to individual populations and colonies.  In recent years, plague has devastated prairie populations in large regions of northern Arizona.  In the 1980s, an extensive prairie dog complex was nearly eliminated by plague in north-central New Mexico.  The Gunnison's prairie dog has yet to recover, surviving in only scant numbers to this day, from a plague outbreak in the 1960s, which eliminated over 600,000 acres of prairie dogs in a 60-mile swath in Colorado.

36.    Near Flagstaff, Arizona, 82% of the total colonies were extirpated following a plague event.  In 1995 and 1996, a plague event extirpated 5 of 8 colonies in the Petrified

National Forest.  47 active colonies near Seligman, Arizona were reduced to 11 colonies after a plague event in 2001.  Colonies in Colorado, Utah and New Mexico have seen similar losses due to plague events.

37.    Site-specific declines can take place in a very short time frame.  For example, 75 colonies found near Flagstaff, Arizona in 2000 declined to 14 colonies a year later.  In Moreno Valley, New Mexico, after two plague epizootics between 1984 and 1987, the population experienced 99.5% mortality, dwindling from 100,000 prairie dogs to only 250 individuals after the first epizootic plague event.

38.    Once established in an area, plague becomes persistent and will periodically erupt, with the potential to eventually extirpate or nearly extirpate entire colonies.  Plague is present throughout 100 percent of the Gunnison's prairie dog's range.  Declines due to plague have been identified at numerous sites throughout the range of the species.  The plague has resulted in the extirpation of numerous Gunnison's prairie dog sites.

39.    Poisoning efforts throughout the 20th century (particularly the early to mid-1900s) have dramatically reduced prairie dog populations.  From 1915 to 1964, 47 million acres of prairie dog habitat was poisoned.  Poisoning does not take place at the same rates as those found in the mid 1900s.  The federal government remains involved in the distribution and application of poisons in prairie dog habitat.

40.    Agricultural operators continue to shoot prairie dogs.  Except for spring, prairie dog shootings continue without restriction.  There are no shooting restrictions for the Gunnison's prairie dog in Colorado and New Mexico.  New Mexico does not monitor shootings.  Colorado's monitoring program indicates massive numbers of Gunnison's prairie dog are shot each year.  In 2002, over 200,000 prairie dogs were shot in the Gunnison's prairie dog range in Colorado.

II.    **The Petition to List the Gunnison's Prairie Dog**

41.     On February 23, 2004, Forest Guardians, as well as 73 individuals, realtors, homebuilders, religious organizations, small business owners, and conservation organizations submitted a petition to list the Gunnison's prairie dog as a threatened or endangered and designate critical habitat under the ESA (hereinafter the "Petition").  The Petition is over 100 pages long and drew upon over 170 sources of scientific information.  Among other things, the Petition called upon the FWS to list the Gunnison's prairie dog because of significant population declines, habitat loss and degradation, ongoing threats to habitat, continuing loss due to shooting, unrestricted poisoning, threats attributed to disease, inadequate regulatory mechanisms, and other factors including drought.

42.     FWS did not respond to the Petition within 90 days, as required under the ESA. On July 29, 2004, Plaintiffs submitted a 60-day notice letter of intent to file suit over FWS's failure to act on the Petition.

43.     On December 7, 2004, some of the same plaintiffs in this case filed suit against FWS for failing to complete a 90-day finding on the Petition to list the Gunnison's prairie dog. See Center for Biological Diversity v. Norton, Civ. No. 1:04-CV-02026 (GK).  On August 9, 2005, FWS and plaintiffs settled this case.  FWS agreed to submit a 90-day finding to the Federal Register by January 26, 2006.

## IV.     The 90-day Finding

44.     FWS found that the Petition presented substantial information indicating that listing may be warranted as early as September 30, 2005.  From September 30, 2005 through January 13, 2006, FWS and its biologists maintained this position with a series of drafts finding that the Petition presented substantial information indicating listing may be warranted. Specifically, FWS recognized that sylvatic plague was a significant threat to the existence of the species.  Throughout this period, FWS intended to initiate a 12-month status review.

**Complaint for Declaratory and
Injunctive Relief - 14**

45.     After January 13, 2006, the agency changed its position.  The change was not made by FWS biologists.  The change was not based on the status of the prairie dog or an assessment of the threats to the prairie dog.  On January 19, 2006, Julie MacDonald, Special Assistant to the Assistant Secretary for Fish and Wildlife and Parks in the Department of the Interior, simply directed the Regional Office (RO) to change the Gunnison's prairie dog decision from positive to negative:

●  "per Julie please make the [gunnison's prairie dog] finding negative."

●  "Sorry to be the bearer of bad news, but we have been instructed to transform the Gunnison prairie 90-day finding from positive to negative. Could you ask the SD Field Office to make the necessary changes to make it a 'not substantial' finding."

46.     The Washington Office made the revisions.

## FIRST CLAIM FOR RELIEF
### Violation of the Endangered Species Act

47.     Each and every allegation set forth in the Complaint is incorporated herein by reference.

48.     FWS must determine "whether the petition presents substantial scientific or commercial information indicating that [listing] may be warranted." 16 U.S.C. § 1533(b)(3). Substantial information is "information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b).

49.     The FWS failed to make the 90-day finding based on the "best scientific and commercial data available" when it based its decision on political and non-scientific issues. 16 U.S.C. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b)

50.     FWS's determination that information in the petition does not constitute "substantial scientific information" is not supported by the 90-day finding and is inconsistent with the information presented in the Petition and available in FWS's own files

51.     FWS's conclusion that chemical control does not pose a significant threat to the current status of the Gunnison's prairie dog is inconsistent with information presented in the Petition and available in FWS's own files.  FWS did not consider the impact of unregulated poisonings as wells as the federal government's involvement with private and public efforts to poison prairie dogs.

52.     FWS ignored evidence from the Arizona Game and Fish Department attributing loss of prairie dogs to drought.

53.     FWS recognized that "development of a comprehensive conservation strategy for the species and its habitat are needed to conserve the species."  FWS relied on promised and future management actions that may or may not be voluntary, are of unknown effectiveness, and lack secure funding to protect the Gunnison's prairie dog from threats associated with shooting and chemical control.

54.     FWS's finding that no patterns can be drawn between the significant declines attributed to sylvatic plague seen at the site-specific level for Gunnison's prairie dog colonies and declines in the overall range-wide population is not supported by information in the Petition or FWS's on files.  This decision is inconsistent with FWS's earlier draft positive finding, where FWS biologists found that plague constitutes a threat to Gunnison's prairie dog.  This finding was revised for political reasons, was not due to new information, and is inconsistent with the best available scientific information.

55.     FWS's finding that continued loss of habitat from urban sprawl, oil and gas activities, and other activities do not threaten the Gunnison's prairie dog is not supported by information in the Petition or FWS's on files.

56.     FWS failed to consider whether the Gunnison's prairie dog is in danger of extinction "throughout all or a significant portion of its range," as required under the ESA.  16 U.S.C. § 1532(6).  FWS never considered whether an additional loss of up to 80% of habitat

since 1961 (and an overall loss of 97% in the past century) is substantial scientific information indicating that listing may be warranted.

57.    FWS review went beyond the four corners of the Petition and information already readily available in its own files.  FWS solicited information and comments from state agencies concerning the status of the Gunnison's prairie dog.  See 50 CFR 424.14(b); see also 71 Fed. Reg. at 6241.

58.    FWS applied the wrong legal standards applicable under the ESA.  The ESA requires FWS to consider whether a "reasonable person" would "believe that the measure proposed in the petition may be warranted."  50 C.F.R. § 424.14.  In issuing the negative 90-day finding, FWS required conclusive evidence of a significant threat to the continued existence of the Gunnison's prairie dog.

59.    The 90-day finding is contrary to ESA mandates and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants providing the following relief:

1.    Declare that Defendants violated the ESA and acted arbitrarily, capriciously, and abused its discretion in making its 90-day finding for the Gunnison's prairie dog;

2.    Declare that FWS made a positive 90-day finding on the Petition to list the Gunnison's prairie dog;

3.    Set aside or enjoin Defendants' decision that the Petition did not present substantial information indicating that listing the Gunnison's prairie dog may be warranted;

4.    Order Defendants through an injunction to issue a new positive 90-day finding on the Petition to list the Gunnison's prairie dog;

5.      Order Defendants through an injunction to issue a 12-month finding on the

Gunnison's prairie dog, after conducting a status review and requesting public comment without

any further delay;

6.      Award Plaintiffs' costs, including reasonable attorneys' fees and expert witness fees

and;

7.      Provide such other relief as the court deems just and proper.


Respectfully submitted,


Dated: _____

<br>

                                                 _____

Paula Dinerstein DC Bar No. 333971
Public Employees for Environmental Responsibility
2000 P St., NW Suite 240
Washington, DC  20036
Tel: (202) 265-7337
Fax: (202) 265-4192
pdinerstein@peer.org

Richard Condit DC Bar No. 417786
Public Employees for Environmental Responsibility
2000 P St., NW Suite 240
Washington, DC  20036
Tel: (202) 265-7337
Fax: (202) 265-4192
rcondit@peer.org


Counsel for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Forest Guardians, Public Employees for Environmental Responsibility, Center for Native Ecosystems, Wildlands Conservation Alliance, Jews of the Earth, Con Slobodchikoff, David Lightfoot, Ana Davidson, Bob Luce | Dirk Kempthorne, Secretary of the Interior; Dale Hall, Director, U.S. Fish and Wildlife Service |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Santa Fe County
(EXCEPT IN U.S. PLAINTIFF CASES)    88886

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Paula Dinerstein
Richard Condit
Public Employees for Environmental Responsibility
2000 P St., NW Suite 240
Washington, DC 20036
Tel: (202) 265-7337

CASE NUMBER   1:06CV02115

JUDGE: Gladys Kessler

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/13/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZEN FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ◉ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☒ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

16 U.S.C. § 1533 -- failure to comply with the Endangered Species Act in making negative 90-day finding for the Gunnison's prairie dog

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint
JURY DEMAND: YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☒  NO ☐  If yes, please complete related case form.

DATE 12/13/06    SIGNATURE OF ATTORNEY OF RECORD *Paula Dinerstein* DC Bar 333971

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.